**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TARLTON PITTARD and NATHAN BERNARDINO, Individually And On Behalf of All Similarly Situated Persons,** | § § § § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO. 4:15-cv-3753** |
| | § | |
| **v.** | § | |
| | § | |
| **RED RIVER OILFIELD SERVICES, LLC d/b/a RED RIVER TECHNICAL SERVICES LLC,** | § § § § | |
| **Defendant.** | § | **JURY DEMANDED** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

*/s/ Marcia N. Jackson*
Marcia N. Jackson
State Bar No. 24008411
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255
Email: marcia.jackson@wickphillips.com

Lauren K. Drawhorn
State Bar No. 24074528
**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789
Email: lauren.drawhorn@wickphillips.com

***ATTORNEYS FOR DEFENDANT RED***
***RIVER OILFIELD SERVICES, LLC d/b/a***
***RED RIVER TECHNICAL SERVICES LLC***

# TABLE OF CONTENTS

I.    STATEMENT OF NATURE AND STAGE OF CASE ......................................... 1

II.    INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 1

III.    SUMMARY OF UNDISPUTED MATERIAL FACTS ......................................... 3

    A.    Red River Oilfield Services............................................................... 3

    B.    Plaintiffs' Work At Red River ....................................................... 4

    C.    Defendant's Pay Policies................................................................. 5

    D.    Mr. Pittard Has No Real Idea How Much, If Any, Overtime Hours He Believes He Was Allegedly "Shorted."........................................................ 6

IV.    LEGAL ARGUMENT AND AUTHORITIES ....................................................... 7

    A.    Summary Judgment Standard of Review/Issues to Be Determined............. 7

    B.    Mr. Bernardino's Claims Should Be Dismissed With Prejudice. ................ 7

    C.    Mr. Tarlton's Limited "Evidence" Is Legally Insufficient To Support His FLSA Claims ................................................................................... 8

    D.    Red River Had No Actual Knowledge Of Any Alleged Unpaid Overtime To Plaintiffs Until They Quit And Filed This Lawsuit ............................... 11

    E.    Plaintiffs Are Not Entitled To Payment For Commuting Back And Forth To Work Or Traveling As A Passenger ....................................................... 14

    F.    The Court Can And Should Determine Now That In No Event Are Plaintiffs, Or Either Of Them, Entitled To Liquidated Damages. .............. 16

V.    CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Allen v. Coil Tubing Servs., LLC,*
    846 F. Supp. 2d at 678 (S.D. Tex. 2012) .................................................................. 17, 18

*Boudreaux v. Swift Transp. Co.,*
    402 F.3d 536 (5th Cir. 2005) ............................................................................. 7

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .......................................................................................... 7,8

*Diaz v. Castro,*
    122 F. Supp. 3d 603 (S.D. Tex. 2014) ............................................................. 9,10,11

*Duffie v. United States,*
    600 F.3d 362 (5th Cir. 2010) ............................................................................. 7

*Foremost Dairies Inc. v. Ivey,*
    204 F.2d 186 (5th Cir. 1953) ........................................................................... 17,18

*Griffin v. S&B Engineers & Constructors, Ltd.,*
    507 Fed. Appx. 377 (5th Cir. 2013) ................................................................... 14

*Ihegword v. Harris County Hosp. District,*
    555 Fed. Appx. 372 (5th Cir. 2014) .................................................................... 8

*Kimball v. Goodyear Tire and Rubber Co.,*
    504 F.Supp. 544 (E.D. Tex. 1980) .................................................................... 17,18

*Little v. Liquid Air Corp.,*
    37 F.3d 1069 (5th Cir.1994) ............................................................................... 7

*Little v. Tech. Specialty Prods. LLC,*
    940 F.Supp.2d 460 (E.D. Tex. 2013) ................................................................ 9,11,16

*Newton v. City of Henderson,*
    47 F.3d 746 (5th Cir. 1995) ............................................................................. 12,13

*Nieddu v. Lifetime Fitness, Inc.,*
    38 F.Supp. 3d 849 (S.D. Tex. 2014) ................................................................ 12,13

*Oti v. Green Oaks SCC, LLC*,
  2015 WL 329216, *3 (N.D. Tex. Jan 23, 2015) ...................................................8,10,11

*Perez v. Mountaire Farms, Inc.*,
  650 F.3d 350 (4th Cir. 2011) ................................................................17,18

*Smith v. Aztec Well Servicing Co.*,
  462 F.3d 1274 (10th Cir. 2006) ............................................................14,15

*Vega v. Gasper*,
  36 F.3d 417 (5th Cir. 1994) ...................................................................... 14

*Wright v. City of Jackson, Miss.*,
  727 F. Supp. 1520 (S.D. Miss. 1989) ........................................................ 17

**Rules**
Fed. R. Civ. P. 56(a) ............................................................................... 7

**Regulations**
29 U.S.C. § 216 ..................................................................................... 16

29 U.S.C. § 254(a) ................................................................................. 14

29 U.S.C. §260 ...................................................................................... 17

Pursuant to Federal Rule of Civil Procedure 56, Defendant Red River Oilfield Services, LLC d/b/a Red River Technical Services LLC, (hereinafter "Defendant," "Red River," or the "Company") hereby submits its Memorandum of Law in Support of its Motion for Summary Judgment to demonstrate that there are no genuine issues of material fact, and Defendant is entitled to summary judgment as set forth below:

## I.  STATEMENT OF NATURE AND STAGE OF CASE

Plaintiffs Tarlton Pittard and Nathan Bernardino (collectively "Plaintiffs") bring this lawsuit against Red River, their former employer, claiming, among other things, they are owed overtime, travel time, and are entitled to liquidated damages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").  Discovery has been completed, and Red River seeks summary judgment.  In short, Plaintiffs cannot – individually or collectively – demonstrate that they are entitled to additional overtime hours on top of the many, many hours of overtime they were previously paid.

## II.  INTRODUCTION AND SUMMARY OF ARGUMENT

Red River employed Plaintiffs as EMI Helpers.  Plaintiffs were paid an hourly wage and overtime for all hours worked over 40 in a workweek.  Their supervisor submitted daily timesheets for hours Plaintiffs worked, and Plaintiffs were paid for all hours correctly reported – including overtime.   When work in the oil and gas industry was abundant, Red River also paid additional amounts it was not legally required to, such as for certain commuting travel time.

When the oil and gas industry experienced a downturn and Red River no longer had local jobs in South Texas, it offered Plaintiffs the opportunity to work in other areas,

so long as they could get themselves to where the work was available.  While they could have relocated to areas in which the Company had assignments, Plaintiffs chose to continue living in South Texas and commute to other areas of the state when they wanted to work, where they would stay for multiple days in Company-provided housing.  On some occasions, for these assignments, the Plaintiffs were invited – but not required – to "catch a ride" to the out-of-town assignment on a Company-owned truck.

Since filing suit, Plaintiff Bernardino has apparently lost all interest in pursuing his claims, failing to meaningfully participate in written discovery and then refusing altogether to appear for deposition (and apparently to communicate with his counsel).  In response, Defendant has filed a Motion to Dismiss, which is currently pending.  But even if Mr. Bernardino's claims are not dismissed for a failure to prosecute, he has no admissible evidence to support his claims, and his claims should now be dismissed on summary judgment.

Plaintiff Pittard's claims fare no better.  First, Mr. Pittard is largely unable to dispute that the time records submitted to the Company on his behalf were true and correct.  Although he generally complains he was "shorted" on certain, unspecified dates, he cannot do anything other than speculate as to when he might have worked, and what he might have been doing during the 10 hours (or so) each week he now seeks to be paid.  However, and in any event, based on the undisputed testimony herein, it appears that the bulk, if not all, of the time Mr. Pittard claims he was underpaid was time spent commuting to and from work and/or traveling off hours as a passenger, which the FLSA and/or DOL *expressly states* is not compensable.  But in any event, given that Red River

actually paid Mr. Pittard overtime on the occasions where overtime hours were reported, and he admits that the one time he brought an apparent paycheck error to the Company's attention it was promptly corrected, there is no reason to believe that Red River acted in any way other than in good faith.  In fact, the undisputed evidence demonstrates that to ensure its pay practices were lawful, the Company consulted with attorneys on these various issues and researched the issue on the U.S. Department of Labor website.

In short, Plaintiff Bernardino's case should be dismissed on summary judgment if not on the pending Motion to Dismiss.  Plaintiff Pittard's claims should also be dismissed on summary judgment, but to the extent, if any, Plaintiffs (or either of them) are allowed to proceed, the Court should determine, as a matter of law, that liquidated damages are not appropriate here.

### III.  SUMMARY OF UNDISPUTED MATERIAL FACTS

**A.      Red River Oilfield Services.**

1.      Red River performs premium tubular inspection and hard banding services for oil and gas drilling clients.  Declaration of Rick Blankenship ("Blankenship Decl.")[1] at ¶ 2. Among other things, these services allow Red River's clients to identify and correct potential problems with drilling rig operations early, before problems escalate and lead to potentially catastrophic results.  *Id.*

2.      Leading the Company is Rick Blankenship, an oil and gas professional with industry experience of approximately 38 years.  *Id.*

---

[1] The Declaration of Rick Blankenship is included as Exhibit A in Defendant's Summary Judgment Appendix filed concurrently herewith.

3.     Red River organizes its inspection staff into independent "teams" or "crews," each led by a certified drill pipe inspector, who typically supervises three hourly workers, called "helpers."  *Id.* at ¶ 3.

**B.     Plaintiffs' Work At Red River.**

4.     Plaintiffs were employed by Red River as EMI helpers assisting with electromagnetic inspections.  Blankenship Decl. at ¶ 8.  Plaintiffs' duties included, but were not limited to, assisting inspectors by setting up trailers and pipe racks for inspections, using tools like drills, high speed and side grinders, and cleaning and maintaining tools and equipment for inspections.  *Id.*

5.     Plaintiffs worked together as the "South Texas" crew, supervised by Harley Carranza.  *See* Blankenship Decl., ¶ 9.  When the work in South Texas dried up, Red River asked Plaintiffs if they wanted to move to a different location where there was still work.  *Id.* at ¶ 10.  Plaintiffs chose not to move but instead to commute from South Texas as necessary.  *Id.*; *see also,* Deposition of Tarlton Carter Pittard ("Pittard Depo."),[2] p. 59:6-12.

6.     Plaintiffs often carpooled in the Company-owned truck, with Mr. Carranza as driver; however, Plaintiffs were not required to do so.  They chose to "catch a ride" instead of driving their own vehicles.  *See* Blankenship Decl., ¶ 10; *see also,* Deposition of Harley D. Carranza ("Carranza Depo."),[3] p. 29:13-19.  It "wasn't rare at all" for the

---

[2] Cited excerpts from the Deposition of Tarlton Carter Pittard are included as Exhibit B-1 to the Declaration of Lauren Drawhorn in Defendant's Summary Judgment Appendix filed concurrently herewith.

[3] The Deposition of Harley D. Carranza is included as Exhibit B-2 in Defendant's Summary Judgment Appendix filed concurrently herewith.  Although Mr. Carranza's deposition was taken in the course of his

Plaintiffs and Mr. Carranza to make the drive between South Texas and West Texas in the off hours, outside the normal workday.  In fact, it happened "all the time."  *See* Carranza Depo. pp. 43:22-44:12.

**C.  Defendant's Pay Policies.**

7.  Red River pays its helpers, including Plaintiffs, on an hourly basis.  *Id*. at ¶ 4.  The inspector on each crew was responsible for keeping track of the helpers' hours and would submit daily time reports to Red River.  *Id*.  If a helper had an issue with their pay, they were encouraged to check with the inspector they worked for that day first.  *Id*. at ¶ 5.  If the inspector was unavailable, then the helper would mention the issue to a higher level inspector and work up the chain so that every issue was reported to Human Resources.  *Id*.  Human Resources would then evaluate the issue and correct it as necessary.  *Id*.

8.  At all times, Red River paid travel time for all time spent after the beginning of the workday until the workday concluded.  *See* Blankenship Decl. at ¶ 6. Inspectors reported hours beginning when the crew was gathered at the designated meeting place at the assigned time and left for the job site (or, if workers drove directly to the job site from their home, their workday started when they arrived at the rig).  *See id*.

9.  Initially, as an incentive to attract hourly workers, Red River also paid for some travel time not otherwise required to be paid under state or federal law, for example, cummuting from home to the initial worksite or returning to home after the end

own (now dismissed) case against Red River, the parties have agreed that his testimony may also be used in this case.

of the workday.  *Id*.  However, in June 2015 when the oil and gas industry slowed down, Red River changed its travel time policy so that it only paid for travel time where required by law.  *Id*. at ¶ 7.  Red River consulted outside advisors to ensure this was lawful and, once the change was made, Red River informed its employees of this new policy.  *Id*.

**D.    Mr. Pittard Has No Real Idea How Much, If Any, Overtime Hours He Believes He Was Allegedly "Shorted."**

10.    In accordance with Red River's pay policies, Mr. Carranza was responsible for reporting Plaintiffs' time.  *Id*. at ¶ 9.  Mr. Pittard has no reason to believe Mr. Carranza was dishonest and did not correctly report time worked.  *See* Pittard Depo., pp. 16:8-13; 18-22, 112:10-14.

11.    Although Mr. Pittard now asserts he was underpaid, he does not have specific dates on which he thinks he was underpaid and cannot determine what he was doing during that time.  *Id*. at pp. 30:5-19, 24:12-14, 88:22-89:2, 120:4-17.

12.    After he filed this lawsuit and in the course of discovery, Mr. Pittard produced a few pages of handwritten notes purporting to report certain days and times that he worked.  But he never showed those records to anyone at Red River during his employment, and cannot, with any certainty, describe what his handwritten time records mean.  Pittard Depo; cited *infra* at pp. 9-10.

13.    The only time Mr. Pittard provided Red River with documents by email to show there was a problem with his paycheck, Red River promptly corrected the issue.  *Id*. at p. 76:6-13.

## IV. LEGAL ARGUMENT AND AUTHORITIES

**A.    Summary Judgment Standard Of Review/Issues To Be Determined.**

Summary judgment for Red River is appropriate "if [it] shows that there is no genuine dispute as to any material fact and [it] is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[ ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiffs "cannot survive a summary judgment motion by resting on the mere allegations of [his] pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Instead, they have the burden to "identify specific evidence in the record and articulate how that evidence supports [their] claim[s]." *Id.* (internal quotations and citation omitted). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (*quoting Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (additional citations omitted)).

**B.    Mr. Bernardino's Claims Should Be Dismissed With Prejudice.**

On December 13, 2016, Red River filed a Motion to Dismiss Claims of Plaintiff Bernadino [Docket No. 21], which is incorporated by reference herein as though fully set forth in this Motion for Summary Judgment.  Although Mr. Bernardino did produce a

limited amount of documents (*e.g.*, his contract with his counsel) and his laywers provided interrogatory responses on his behalf, at no time has Mr. Bernadino submitted a verification of his interrogatory responses.  *See* Declaration of Lauren K. Drawhorn ("Drawhorn Decl."),[4] ¶ 4.  In fact, based on his responses to Defendant's First Request for Production, Mr. Bernardino apparently has no documents to support his claims.  *See id.*, ¶ 5.

Mr. Bernadino has no evidence that he can use to support his claims against Red River.  Therefore, Red River seeks summary judgment on all of Mr. Bernardino's claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986) ("…the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  Mr. Bernardino has the burden of proof to support his claims for unpaid overtime pay.  He has presented no evidence to meet this burden.  His claims should be dismissed.

## C.    Mr. Tarlton's Limited "Evidence" Is Legally Insufficient To Support His FLSA Claims.

An employee bringing an action under the FLSA must prove that he performed work for which he was improperly compensated and produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Ihegword v. Harris County Hosp. District*, 555 Fed. Appx. 372, 374 (5th Cir. 2014); *Oti*

---

[4] The Declaration of Lauren K. Drawhorn is included as Exhibit B in Defendant's Summary Judgment Appendix filed concurrently herewith.

*v. Green Oaks SCC, LLC*, 2015 WL 329216, *3 (N.D. Tex. Jan 23, 2015); *Little v. Tech.*

*Spec. Prods. LLC*, 940 F.Supp.2d 460, 470 (E.D. Tex. 2013).   Where the only evidence

provided consists of plaintiff's testimony that he complained to his supervisor about

underreporting his hours, such "vague, conclusory statements, unsupported by any facts"

are not competent evidence and fail to satisfy the plaintiff's burden of proof.  *Diaz v.*

*Castro*, 122 F. Supp. 3d 603, 616-17 (S.D. Tex. 2014).   Likewise, a plaintiff's

handwritten timesheets and paychecks, standing alone, are insufficient to demonstrate the

hours worked, which hours plaintiff was compensated for, and those which he was not

compensated for – which is the plaintiff's burden to show.  *Little*, 940 F.Supp.2d at 471.

   Under this Standard, Mr. Pittard has insufficient evidence to support his FLSA

claims.  Mr. Pittard does not even know – with any certainty – how many hours for which

he was not paid for or how many hours he is seeking compensation:

> Q: Okay, So you do agree that you were paid an hourly rate
> of – it looks like it was $15 at the time this check was written,
> correct?
>
> A: Yes.
>
> Q: And that for hours over 40 in a week you were paid
> overtime, correct?
>
> A: Yes.
>
> Q: All right.  You're not claiming that the company refused to
> pay you overtime; you're just claiming that you worked more
> hours than you were actually paid for on the check, is that is?
>
> A: Yes.
>
> Q: But you don't know for sure on what checks or how many
> times you were shorted, correct?

A: Not off – no.

*See* Pittard Depo, p. 30:5-19; *see also, id.* at pp. 24:12-14, 88:22-89:2, 120:4-17.  Vague

and conclusory statements such as these cannot satisfy Plaintiffs' burden on summary

judgment.  *See Diaz*, 122 F. Supp. 3d at 616-17.

     After the litigation commenced, Mr. Pittard presented handwritten notes relating to

his time, but those notes do not provide any evidence of when he worked, what he

accomplished, or for which of those hours he was not paid:

> Q: Based on the documents that you have and that we've
> talked about, it there a way to even determine which – what
> type of work you are seeking pay for and what type of work
> you were performing for the hours that you claim were not
> paid?
>
> A: A lot of it will be drive time from – to and from the
> worksites and just hours that are missing and…
>
> Q: Again, you don't have any way of giving me anything
> more specific than what you've just stated?
>
> A: No.

*Id*. at p. 121:3-12.  *See also, id*. at pp. 86:19-87:6, 94:10-21, and 98:22-99:1.  Where, as

here, a plaintiff presents merely a "guess" as to how many overtime hours he worked and

produced no factual allegations as to when those hours were worked, what was

accomplished, for how many of those hours he wasn't paid, and can point to no records

which under-report his time, the plaintiff has no evidence to support his claims and

summary judgment must be granted.  *Oti*, 2015 WL 329216 at *3.

     Again, Mr. Pittard acknowledges he believe his supervisor, Mr. Carranza,

accurately reported his hours, and Mr. Pittard has no reason to believe any of his

supervisors would falsify his timesheets.  *See* Pittard Depo., pp. 16:8-22; 118:12-19.

Taking this statement as true, it is unclear how Mr. Pittard could have been underpaid in

the first place.  If he accurately reported his time to Mr. Carranza, and believes that Mr.

Carranza accurately reported his time to the Company, then the only source of the

underpayment would be if Red River failed to pay him for the hours reported.  If this is

the case, Mr. Pittard should easily be able to point to discrepancies in the documents

between the hours reported by Mr. Carranza and those for which he was paid.  Yet, when

asked to provide such information during discovery, Mr. Pittard was unable to do so.

Based on the foregoing, Mr. Pittard has insufficient evidence to demonstrate the

amount and extent of the alleged work he performed but was not paid for, as a matter of

just and reasonable inference.  Instead, all Mr. Pittard provides are vague, conclusory

statements, unsupported by any facts, that he was not paid for some unspecified number

of hours he allegedly worked.  Mr. Pittard has insufficient evidence to support his claims

under the FLSA and summary judgment is justified.  *See, Oti*, 2015 WL 329216, *3;

*Diaz*, 122 F.Supp.3d at 616-17; and *Little*, 940 F.Supp.2d at 469-77.

**D.    Red River Had No Actual Knowledge Of Any Alleged Unpaid Overtime To Plaintiffs Until They Quit And Filed This Lawsuit.**

In addition to the fact that Plaintiffs have almost no factual support that they

actually worked unpaid overtime, Plaintiff cannot show that Red River had actual

knowledge of any such alleged unpaid overtime. If an employee fails to notify the

employer or deliberately prevents the employer from acquiring specific knowledge of the

overtime work, the employer's failure to pay for the overtime hours is not a violation of

the FLSA.  *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995); *Nieddu v. Lifetime Fitness, Inc.*, 38 F.Supp. 3d 849, 853 (S.D. Tex. 2014) (Harmon, J.).  Here, even if Mr. Pittard made vague statements to supervisors that he had been "shorted," he presented no evidence to support these claims, or to indicate that his time had been accurately reported.  Red River had no reason to believe that its time records were not accurate and that Plaintiffs (or either of them) were working unpaid overtime "off the clock."  To the contrary, Plaintiffs' time sheets regularly reported overtime hours, which were always paid as a matter of course.[5]

Plaintiffs' only documentation refuting the times sheets on which Red River relied or evidencing that they worked time in addition to what their supervisors documented are Pittard's recently-produced handwritten notes, which were only presented to Red River *after* this lawsuit commenced.  Pittard Depo., pp. 88:22-90:2, 96:1-9, 97:1-21; 120:2-17.   With no reason to question the time sheets originally submitted by Plaintiffs' supervisors, Red River reasonably relied on those records in calculating and making salary payments. Blankenship Decl., ¶ 5.   According to Mr. Pittard himself, his supervisor did his best to report accurate time to Red River and had no reason to make intentional errors on the report.  *See* Carranza Depo., p. 90:5-22.  He would send daily emails and then would send a spreadsheet every two weeks showing the time.  *Id*. at p. 93:3-21.   Red River encouraged the supervisors to submit the daily timesheets as soon as possible, when their memory was freshest.  *See* Blankenship Depo.,

---

[5] As explained by Mr. Blankenship, supervisors listed the "start time" of the workday when the relevant employees either appeared at the "shop" or "yard" at the assigned time to travel to the rig, or at the time the employee arrived at the rig if he/she chose to drive his/her personal vehicle directly to the worksite. *See* Blankenship dep. pp. 106:12-107:23.

p. 112:12-15.   Once the two-week spreadsheet was submitted, Red River would cross-reference it with the daily time reports in an attempt to reduce any honest mistakes in keeping Plaintiffs' time.   *Id*., at p. 105:5-9.   If there was a dispute between the spreadsheets and the daily time reports, Red River would rely on the daily time records. *Id*. at p. 151:13-22.   Pittard agrees that his supervisors would have no reason to falsify the daily time reports they submitted to Red River.   Pittard Depo., pp. 16:8-22; 118:12-19.   In fact, Plaintiff does not believe anyone at Red River was purposely withholding pay from him, knowing he was entitled to it.   Pittard Depo., p. 77:12-16; 97:14-21.

Courts in the Fifth Circuit, including this Court, acknowledge that an employer may rely on submitted timesheets unless there is evidence that the employer required the entry of false reports or knew or should have known the employee was working more than reported.   *Newton*, 47 F.3d at 748-49 (denying overtime pay where there were no facts to support a conclusion that the defendant "had reason to believe that the information reported to it via [the plaintiff's] signed payroll forms was inaccurate"); *Nieddu*, 38 F.Supp. 3d at 869-70 (denying overtime compensation where the plaintiff failed to show the defendant had actual or constructive knowledge that the plaintiff was working extra hours or hours overtime or that the plaintiff failed to report those hours has required by the defendant's policies and requirements).   Record evidence makes clear that Red River reasonably relied upon the documents supplied by Plaintiffs' supervisor and had no reason to question their accuracy or otherwise suspect that Plaintiffs were working unpaid overtime.   Accordingly, Plaintiff's overtime claim cannot prevail.

**E.  Plaintiffs Are Not Entitled To Payment For Commuting Back And Forth To Work Or Traveling As A Passenger.**

Even if Plaintiffs claims are not dismissed outright, at a minimum, any hours they are seeking to be paid for time spent traveling as a passenger, and/or to and from his home and the worksite, or for preliminary or postliminary job functions, is not compensable in any event.  Under the Portal-to-Portal Act, employers are not liable under the FLSA for failing to compensate employees for:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

> (2) activities which are preliminary to or postliminary to said principal activity or activities.

29 U.S.C. § 254(a); *Griffin v. S&B Engineers & Constructors, Ltd.*, 507 Fed. Appx. 377, 380-81 (5th Cir. 2013); *see also* DOL Fact Sheet #22, available at https://www.dol.gov/whd/regs/compliance/whdfs22.pdf (noting that travel time not compensable unless it cuts across the "normal" workday and as "an enforcement policy," the Division will not consider as work time time spent in travel away from home outside of regular working hours as a passenger in a[n]… automobile.")[6]

Thus, employers are not required to compensate employees for time spent commuting between home and their workplace or for any activities that are preliminary or postliminary to their principal activities at work.  29 U.S.C. § 254(a); *Griffin*, 507 Fed. Appx. at 381; *see also, Vega v. Gasper*, 36 F.3d 417, 424 (5th Cir. 1994); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1286 (10th Cir. 2006).  Further, companies are not

---

[6] As noted above, Mr. Carranza confirmed that when his crew traveled out of town, they did so during their "off hours."  *See* Carranza dep. 43:22-44:12.

required to compensate employees for work that is "merely incidental" to the employees' travel to and from their work sites.  *See, e.g. Smith*, 462 F.3d at 1290.  The test is whether the time is "spent predominately for the employer's benefit or for the employees." *Id*. Digging trucks out of the mud, changing tires, opening and closing gates, etc. are "merely incidental" to the employee's travel to and from their work sites and fall within the portal-to-portal exception. *Id*. at 1291.

Here, Red River was not required to compensate Plaintiffs for time commuting between home and their workplace, even if their workplace was several hours away (by Plaintiff's choice).  Mr. Pittard was not authorized to drive a Company truck and, in fact, never drove the company truck.  *See* Oral Deposition of Tarlton Carter Pittard ("Pittard Depo."),[7] p. 52:3-7.  Instead, Mr. Pittard was always a passenger in the Company truck (and thus, not entitled to compensation).  *Id*. at p. 52:8-9.  Therefore, Mr. Pittard was always "riding" to work under the Portal-to-Portal act. In addition, while a passenger, Mr. Pittard did not do any work but instead would text or make sure the drive was not falling asleep.  *Id*. at p. 62:14-63:2.  Although Plaintiffs may occasionally have had to change tires or perform maintenance on the company truck, those actions are "merely incidental" to Plaintiff's travel and Red River was not required to compensate Plaintiffs for that time. *See, e.g. Smith*, 462 F.3d at 1290.

In order to get compensation for ordinary home-to-work travel, which Plaintiffs seem to seek here, an employer must have a custom or practice of doing so "in effect at

---

[7] Cited excerpts from the Oral Deposition of Tarlton Carter Pittard are included as Exhibit B-1 in Defendant's Summary Judgment Appendix filed concurrently herewith.

the time of such activity." *See Little v. Tech. Specialty Prods. LLC*, 940 F.Supp.2d 460, 473 (E.D. Tex. 2013).  For example, in *Little v. Tech. Specialty Products, LLC*, the plaintiff was a field service technician based out of his home and assigned to drive to oil rig sites to install and service video camera systems.  *Id*. at 465.  The employer there initially counted all driving time as time spent working and included it in calculating regular and overtime pay.  *Id*.  However, in September 2011, the company began a new policy that excluded the first and last commute of the date.  *Id*.  The company informed its employees of this new policy.  *Id*.  The plaintiff sought compensation for all of his travel time; however, the court noted that because the company changed its travel time policy and notified its employees of the change, plaintiff's ordinary home-to-work travel time was not made compensable by the company's custom or practice.  *Id*. at 473.

Similarly, even though Red River voluntarily paid for some employee travel (and/or commute) after June 2015, Red River changed its policy and made clear it would no longer automatically pay for the entirety of employee commute time.  *See* Blankenship Decl., ¶ 6.  Like the defendant in *Little*, Red River communicated this policy change to all of its employees and operated consistently going forward.  *Id*.; *see also,* Deposition of Rick Blankenship ("Blankenship Depo."),[8] pp. 109:11-110:15.

### F.    The Court Can And Should Determine Now That In No Event Are Plaintiffs, Or Either Of Them, Entitled To Liquidated Damages.

Summary judgment is also appropriate as to Plaintiffs' liquidated damages claims. Although 29 U.S.C. § 216 calls for liquidated damages for prevailing plaintiffs, courts

---

[8] Cited excerpts from the Deposition of Rick Blankenship is included as Exhibit B-3 in Defendant's Summary Judgment Appendix filed concurrently herewith.

can deny such an award where a defendant acted in good faith and had a reasonable belief that its actions did not violate the FLSA. *Allen v. Coil Tubing Servs., LLC*, 846 F. Supp. 2d at 678, 714 (S.D. Tex. 2012); 29 U.S.C. §260. Court discretion in the area of liquidated damages is meant to mitigate the harshness of the FLSA's strict liability, along with its double damages. *Id.* An employer shows a lack of good faith when it "knows, or has reason to know, that his conduct is governed by the [Act]." *Wright v. City of Jackson, Miss.*, 727 F. Supp. 1520, 1522 (S.D. Miss. 1989) (declining to award liquidated damages).

Red River is entitled to summary judgment on the liquidated damages claim for at least two reasons. First, as explained in detail above, Red River had *no knowledge* during Plaintiffs' employment that he claimed to be working unpaid overtime – he regularly reported overtime hours that were paid. Second, Red River relied on the advice of counsel regarding its pay practices, which courts have found to be evidence of good faith. *See Kimball v. Goodyear Tire and Rubber Co.*, 504 F.Supp. 544, 549 (E.D. Tex. 1980); *Foremost Dairies Inc. v. Ivey*, 204 F.2d 186, 190 (5th Cir. 1953); *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375-76 (4th Cir. 2011). Red River sought and received legal advice in connection with its change in travel time policy. Blankenship Decl., ¶ 6. Red River also researched the issue on the internet, looking at the Department of Labor, website. *See* Blankenship Depo., pp. 99:15-24. Red River relied on the advice of counsel and its own research in changing its policy and not paying employees for travel time outside of work hours, for ordinary commutes to and from work, or where employees were riding as passengers and performing only incidental work as necessary.

These circumstances fully satisfy Red River's burden to show that it acted in good faith and with a reasonable belief that it did not violate the FLSA. *See Allen*, 846 F. Supp. 2d at 714 (finding liquidated damages were not appropriate even where defendants failed to seek legal advice regarding overtime and some of its classification decisions were incorrect); *Kimball*, 504 F.Supp. at 549; *Foremost Dairies Inc.*, 204 F.2d at 190; *Perez*, 650 F.3d at 375-76.

## V. CONCLUSION

While working at Red River, Plaintiffs were paid based on the time reports submitted and in accordance with Red River's pay policies. Although Plaintiffs now assert they are entitled to pay for additional travel time, they provide insufficient evidence to support such claim. Plaintiffs' claims for travel/commute time should be dismissed with prejudice. At a minimum, the Court should find that Red River acted in good faith and had a reasonable belief that it paid the Plaintiffs appropriately and should award summary judgment dismissing Plaintiffs' liquidated damages claim.

Date:  January 30, 2017

Respectfully submitted,

*/s/ Marcia N. Jackson*
Marcia N. Jackson
State Bar No. 24008411
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255
Email: marcia.jackson@wickphillips.com

Lauren K. Drawhorn
State Bar No. 24074528
**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789
Email: lauren.drawhorn@wickphillips.com

***ATTORNEYS FOR DEFENDANT RED RIVER OILFIELD SERVICES, LLC d/b/a RED RIVER TECHNICAL SERVICES LLC***

## <u>CERTIFICATE OF SERVICE</u>

On January 30, 2017, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal rule of Civil Procedure 5 (b)(2).

*/s/ Marcia N. Jackson*
Marcia N. Jackson